IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                                        CRIMINAL ACTION NO.  3:18-00088

MICHAEL CRISP

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Michael Crisp's Second Emergency Motion for Compassionate Release (ECF No. 64). Seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) ("Section 3582"),  Defendant points to the spread of the novel coronavirus ("COVID-19") in prisons, his existing health conditions, and a provision in the recently-enacted Coronavirus Aid, Relief, and Economic Security ("CARES") Act permitting the Attorney General to widen the pool of inmates eligible for home confinement. *See* Mem. from Att'y Gen. to Dir., BOP 1–2 (Apr. 3, 2020), ECF No. 64-1. For the reasons stated below, the Court **DENIES** Defendant's motion.

**I. BACKGROUND**

On April 26, 2018, Defendant was charged with possession of child pornography, involving prepubescent minors, in violation of 18 U.S.C. Sections 2252A(a)(5)(B) and 2252A(b)(2). *Indictment*, ECF No. 1. The basis for the indictment was the Federal Bureau of Investigation's seizure of nearly 6,000 files with depictions of minors engaging in sexually explicit conduct stored on Defendant's hard drives and removable optical discs. Presentencing Report 5–6, ECF No. 60. On August 13, 2018, Defendant pleaded guilty. Written Plea of Guilty, ECF No. 45. On November 15, 2018, the Court sentenced Defendant to 37 months of

imprisonment and 15 years of supervised release. Judgment, ECF No. 57. Defendant is set to be released from confinement on July 12, 2021. Def.'s Mot. Ex. C, ECF No. 64-3.

Defendant is 58 years old and considers himself to be in "poor physical health." Def.'s Mot. 5. Specifically, Defendant asserts that he suffers from the following ailments: atrial fibrillation (irregular heartbeat), chronic diastolic congestive heart failure, hypertension (high blood pressure), diminished kidney function, and pre-diabetes. Def.'s Mot. 5–9. Although Defendant initially provided no documentation to support these assertions, the Government received Defendant's medical records and submitted those records to the Court under seal. Resp. to Def.'s Mot. Ex. 3, ECF No. 68-3. The Government concedes that these records show that Defendant has suffered from atrial fibrillation, moderate chronic kidney disease, hypertension, and pre-diabetes. Resp. to Def.'s Mot. 11, ECF No. 68. The Court finds that the records also show that Defendant suffers from hyperlipidemia (high cholesterol). Def.'s Reply 165; Resp. to Def.'s Mot. Ex. 3, at 214. The parties also agree that Defendant has managed these ailments through prescription medication. Def.'s Mot. 5; Resp. to Def.'s Mot. 11.

Defendant is currently held at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"). FMC Lexington is an administrative security facility housing 1,127 inmates with a satellite camp that has 146 inmates. Approximately 287 inmates at FMC Lexington have tested positive for COVID-19, and eight inmates have died as a result of COVID-related complications. Resp. to Ct.'s Aug. 28 Order Ex. 3, ECF No. 75-3. As of August 12, 2020, the facility had 226 inmates on "recovery status," and only one active inmate case.[1] Due to this low infection rate, Bureau of Prisons ("BOP") resumed "expansion of [FMC Lexington's] normal operations"

---

[1] In its supplemental briefing, the Government provides a statement from Warden Quintana, which states that there are zero positive cases among inmates for COVID-19. Resp. to Ct.'s Aug. 28 Order, Ex. 3. However, in its brief, the government explains that one inmate has tested positive, but subsequently tested negative twice. *Id*. at 4.

including "modified work, programing, recreation, meals and pill/insulin schedules" with several social distancing policies. *Id*.

Defendant first requested release under Section 3582 from FMC Lexington on May 15, 2020 (ECF No. 62). The Court denied Defendant's *pro se* request on the grounds that Defendant did not demonstrate an extraordinary and compelling reason for release, nor did he exhaust his administrative remedies. Order, ECF No. 63. On June 11, 2020, Defendant submitted a request to FMC Lexington for release. Def.'s Mot. Ex. B, ECF No. 64-2. It is currently pending review. Resp. to Def.'s Mot. 2. On July 23, 2020, Defendant filed this motion with the Court.

## II. DISCUSSION

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended Section 3582 and enabled courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. But before defendants may request such a reduction, defendants must ask the BOP to do so on their behalf. *See* 18 U.S.C. § 3582(c)(1)(A). If the BOP denies the defendant's request or does not respond within 30 days, the defendant may file a motion before the court. *Id*.

If an inmate satisfies this administrative exhaustion requirement, courts may reduce the inmate's sentence if there are (1) "extraordinary and compelling reasons," (2) the defendant is "no longer a danger to the safety of any other person or to the community," and (3) release is consistent with the factors identified under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c); U.S.S.G § 1B1.13 (2018).

    a. **Exhaustion of Administrative Remedies**

The threshold issue is whether Defendant has exhausted his administrative remedies

under Section 3582(c)(1)(A). Given that Defendant requested compassionate release from the FCM Lexington on June 11, 2020 and filed this motion on July 23, 2020 the requisite 30 days has passed. Therefore, Defendant has exhausted his administrative remedies, and the Court may consider the merits of his motion.

### b. Extraordinary and Compelling Reasons for Release

Under Section 3582(c)(1)(A)(i), as amended, courts have independent discretion to determine whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence. Nevertheless, courts may consider the guidelines published by the United States Sentencing Commission ("USSC") and the BOP when exercising its discretion. According to the USSC's Policy Statement, "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. U.S.S.G. §1B1.13 cmt. n.1(A)-(D).

The BOP criteria for "extraordinary and compelling reasons" are set forth in Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)"). Under these criteria, the BOP recommends compassionate release for "medical circumstances" only where the inmate has a terminal illness or is debilitated such that he or she is confined to a bed or chair for a minimum of 50% of waking hours. *Id*. at 4–5.

Although the above guidance has not been updated to address the spread of a novel virus, Attorney General William Barr has twice issued memoranda addressing this scenario. In the

March 26, 2020 memorandum, Barr provided a "non-exhaustive list of discretionary factors" for BOP to consider when reviewing inmates for suitability for home confinement. Mem. from Att'y Gen. to Dir. BOP 1–2 (March 26, 2020), available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed September 1, 2020). This list includes the "age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines," facts related to the condition and security of the facility, and the inmate's crime of conviction and assessment of danger. *Id*. In the April 3, 2020 memorandum, Barr directed the BOP to "maximize appropriate transfers to home confinement of all appropriate inmates" held at facilities "experiencing significant levels of infection." Mem. from Att'y Gen. to Dir. BOP 1–2 (April 3, 2020).

Recognizing the above guidance, several courts, including this one, have interpreted compassionate released as justified where the defendant's health conditions and the facility conditions place defendant at a high risk of severe illness if he or she contracts COVID-19. *See e.g.*, *United States v. Wilson*, No. 2:18-cr-00295, 2020 U.S. Dist. LEXIS 132468, at *10 (S.D. W. Va. July 27, 2020). Applying this standard, the Court finds that although Defendant has two significant health concerns, he has not shown that the conditions at FMC Lexington create a high risk of infection.

Defendant has shown that he suffers from several chronic medical conditions that could cause serious complications if he contracts the COVID-19 virus. Defendant's medical records confirm that he has been diagnosed with the following: chronic atrial fibrillation, hypertension, hyperlipidemia, chronic kidney disease, and pre-diabetes.[2] Resp. to Def.'s Mot. Ex. 3, at 348,

---

[2] Although Defendant claimed to suffer from chronic heart failure, his records indicate that on March 31, 2020, he had "no aginal or [congestive heart failure] symptoms with exertion or at rest." Resp. to Def.'s Mot. Ex. 3, at 348.

353.

In February 2018, Defendant met with a cardiologist who confirmed that Defendant was being treated for management of chronic atrial fibrillation, hypertension, and hyperlipidemia. *Id.* at 165. At that time, the cardiologist prescribed Defendant five different cardiac medications. *Id*. at 164. Defendant's subsequent records indicate that these medications have managed his symptoms. *See id*. at 11, 16, 256, 349. The BOP has continued to monitor these conditions, as reflected in a July 29, 2020 chart review. *Id*. at at 196-97.

In addition to the above diagnoses, Defendant has a history of pre-diabetes and chronic kidney disease ("CKD"). Defendant's December 2018, January 2019, and February 2019 blood tests indicated that his glucose levels were abnormal. Resp. to Def.'s Mot. Ex. 3, at 55, 141, 178. As a result of these blood tests, Defendant was diagnosed with pre-diabetes and started taking new medication, a metformin tablet. *See id*. at 111, 121. Although metformin seemed to control Defendant's glucose levels, it diminished his kidney function. In July, September, and October of 2019, Defendant's blood tests indicated unhealthy levels of creatinine (a measure of kidney function). *Id*. at 129, 337, 232. Defendant was taken off the metformin medication and diagnosed with Stage 3 Chronic Kidney Disease. *Id*. at 237. After Defendant stopped taking metformin, his blood creatinine levels fluctuated. *Id*. at 226, 305. Defendant has not received a blood test since the beginning of the pandemic in March 2020; however, his records indicate that his CKD diagnosis is still current. *See id*. at 193.

The CDC has concluded that kidney disease places a person at risk of serious complications if he or she contracts COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-

---

Therefore, the Court finds that Defendant did not submit sufficient evidence to support this claim.

ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 31, 2020). In addition, the CDC's website also indicates that those with hypertension "might be at an increased risk for severe illness from COVID-19." *Id*. As detailed above, Defendant provided sufficient evidence that he suffers from CKD and hypertension. Therefore, the Court finds that Defendant has satisfied this element.

However, although Defendant has been diagnosed with two conditions that could increase his risk for COVID-related complications, he has not demonstrated that the conditions at FMC Lexington create a significant risk of infection. When determining whether a facility's conditions create an elevated risk of contracting COVID-19, courts have considered the rate of infection among inmates and staff, the number of deaths associated with COVID-19, and the precautions the facility is taking to prevent the spread of the virus. *See, e.g.*, *United States v. Wilson*, No. 2:18-cr-00295, 2020 U.S. Dist. LEXIS 132468, at *10 (S.D. W. Va. July 27, 2020).

In total, FMC Lexington has reported 287 confirmed cases of COVID-19 among inmates and eight inmate deaths as a result of COVID-19 complications. Resp. to Ct.'s Aug. 28 Order, Ex. 3, ECF No. 75-3. However, as of August 28, 2020, there is only one confirmed active case among FMC Lexington inmates. *Id*. at 3. Although the Government concedes that FMC Lexington is no longer "mass testing" inmates for COVID-19, it tests inmates who are symptomatic, newly admitted, transferred, or released. Resp. to Ct.'s Aug. 28 Order 3.

FMC Lexington has also taken several measures to control the spread of the virus, including: inmate social distancing; securing inmates in their assigned cells and quarters; limiting movement and gathering of inmates to laundry, showers, telephone, and computer access; limiting movement of inmates; limiting staff travel; providing all inmates and staff with facemasks; testing all inmates that report symptoms; screening newly admitted inmates for

symptoms and fevers; placing symptomatic and exposed inmates in isolation until they are cleared by medical staff; and limiting visitor and contractor access to the facility. Resp. to Def.'s Mot. 2–6 (citations omitted). In light of the various precautions taken by FMC Lexington and the low infection rate, the Court finds that Defendant has not demonstrated that there is a significant risk of contracting the disease. Accordingly, Defendant has not established "extraordinary and compelling reasons" for the Court to reduce his sentence.

### III. CONCLUSION

For the reasons stated above, Defendant's motion for compassionate release is **DENIED**.

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

ENTER:	September 4, 2020